**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LEXINGTON DIVISION**

**CIVIL ACTION NO. 04-226-JBC**

**GUNDAKER/JORDAN AMERICAN**
**HOLDINGS, INC.,**                                                    **PLAINTIFF,**

**V.**                     **MEMORANDUM OPINION AND ORDER**

**CHARLES R. CLARK, ET AL.,**                                          **DEFENDANTS.**

**\* \* \* \* \* \* \* \* \* \***

The defendants, The Lamb Foundation and Wendell Johnston, have moved

this court to dismiss them from this action pursuant to Federal Rule of Civil

Procedure 12(b)(2) for lack of jurisdiction over the person (DE 39).  The court,

having considered the memoranda of the parties and being otherwise sufficiently

advised, will deny the defendants' motion.

**I. Statement of Facts**

The plaintiff, Gundaker/Jordan American Holdings, Inc. ("JAHI"), a Florida

corporation with its principal offices in Steamboat Springs, Colorado, is a public

holding company.  At all times relevant to this litigation, it was known as Jordan

American Holdings, Inc., and its business headquarters were located in Lexington,

Kentucky.  At the time the events leading to this suit began, W. Neal Jordan

("Jordan") was JAHI's Chief Executive Officer.  Charles W. Clark ("Clark") and A.J.

Elko ("Elko"), defendants here, held officer positions at JAHI at that time.  Both

Clark and Elko maintained personal residences in Lexington, and Jordan performed

his official duties from Lexington on a number of occasions as well.

On May 21, 2004, JAHI filed this diversity action, pursuant to 28 U.S.C. § 1332, against Clark, Elko, and certain John Does who allegedly aided and abetted the named defendants, asserting claims of breach of fiduciary duty.  Specifically, JAHI alleged that, in 2001, Clark and Elko conspired with others to remove Jordan from his position as CEO of JAHI, the purported goal of their scheme being to gain control of JAHI and prevent their own loss of employment.  To accomplish this end, Clark and Elko allegedly solicited the revocation of proxies from one or more shareholders of JAHI in an effort to defeat a quorum at JAHI's annual meeting, which was to take place on May 22, 2001.  Shortly after the meeting was adjourned, Elko, Clark, and Jordan held a Special Meeting of the Board of Directors, at which Elko and Clark proposed that Jordan be removed as an officer of JAHI. The proposal was adopted by a 2-to-1 vote.  Jordan was later reinstated as CEO of JAHI in November 2002.

On October 14, 2005, JAHI moved for leave to file its First Amended Complaint, which was deemed filed on November 30, 2005.  The First Amended Complaint asserted claims for aiding and abetting and tortious interference with a business relationship against The Lamb Foundation and Wendell Johnston (collectively, "Lamb").  JAHI alleged that Lamb conspired with Clark and Elko to revoke its previously voted proxy to prevent a quorum at JAHI's May 22, 2001, annual meeting and that Lamb converted its preferred stock to common stock in an effort to manipulate the vote at other meetings.

Both Lamb and Johnston are and were, at all relevant times, residents of the state of Texas. When the events leading to this litigation occurred, Lamb was the sole preferred stockholder of JAHI and also held around seven percent of JAHI's outstanding common stock. JAHI's business affiliation with Lamb began in 1994, and Lamb maintained contact with JAHI beginning in 1994 and continuing to the time of this action's subject matter.

**II. Standard of Review**

Once a defendant challenges personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction exists. *Jude v. First National Bank of Williamson*, 259 F. Supp. 2d 586, 589 (E.D. Ky. 2003). This burden must ordinarily be met by a preponderance of the evidence. *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998). If a court decides that a motion to dismiss can be ruled on before trial, the court may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion. *Id.* When a district court does not conduct an evidentiary hearing on the issue of personal jurisdiction in considering a motion to dismiss on that basis, the plaintiff need only make a prima facie showing of jurisdiction. *Id.; Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). Under such circumstances, a court must view the pleadings and affidavits in the light most favorable to the plaintiff and not consider the controverting assertions of the defendant when deciding whether to

dismiss for lack of jurisdiction. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000).

### III. Legal Analysis

The exercise of personal jurisdiction is valid only if it meets both the state long-arm statute and constitutional due process requirements. *Calphalon Corp.*, 228 F.3d at 721.  Since Kentucky's long-arm statute (KRS 454.210) has been consistently interpreted as reaching the full limits of constitutional due process, *Lexmark Int'l, Inc. v. Laserland, Inc.*, 304 F. Supp. 2d 913, 915 (E.D. Ky. 2004), the two inquiries merge and the court need only determine whether the assertion of jurisdiction violates constitutional due process. *Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd.,* 138 F.3d 624, 627 (6th Cir. 1998) (quoting *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 793 (6th Cir. 1996)).

The Due Process Clause permits the exercise of both general and specific jurisdiction. *Aristech*, 138 F.3d at 627.  In its response to Lamb's motion to dismiss, JAHI averred that "[t]he case at bar is one of specific jurisdiction" (Memorandum in Opposition to Defendants The Lamb Foundation and Wendell Johnston's Motion to Dismiss, p. 8).  Thus, the court must decide three issues: whether the defendant has purposefully availed himself of the privilege of acting in the forum state or causing a consequence in the forum state; whether the cause of action arose from the defendant's activities in the forum state; and whether the acts of the defendant, or consequences caused by the defendant, have a

substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)

The "purposeful availment" requirement is satisfied when the defendant's contacts with the forum state "proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State," and when the defendant's conduct and connection with the forum are such that he "should reasonably anticipate being haled into court there." *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1263 (6th Cir. 1996) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474-75 (1985)).  The purposeful-availment prong of the test ensures that a defendant will not be compelled into court solely as the result of random or fortuitous events or contacts. *Calphalon Corp.,* 228 F.3d at 721-22. The absence of physical contacts with a state will not defeat jurisdiction in that state when a defendant's efforts are purposefully directed there. *Burger King Corp.*, 471 U.S. at 476.

Construing (as we must) the facts of this case in the light most favorable to the plaintiff, JAHI has met its burden of presenting a prima facie case of purposeful availment by Lamb.  JAHI has alleged that in 2001 Lamb unlawfully revoked its proxies and converted its preferred stock to common stock in furtherance of a conspiracy with Clark and Elko to remove Jordan as CEO and manipulate votes at JAHI's meetings.  Beginning in 2000 and during all relevant time periods, JAHI's

business headquarters were in Lexington, Kentucky.  Lamb was or should have

been aware of this fact, since it had engaged in business relations with JAHI from

1994 until the events giving rise to this litigation occurred in 2001 and 2002.  A

defendant may purposefully avail itself of the benefits of acting within Kentucky

when it deliberately engages in significant activities within Kentucky or creates

continuous obligations between itself and the citizens of Kentucky.  *Info-Med*., *Inc*.

*v*. *National Healthcare*, *Inc*., 669 F. Supp. 793, 796 (W.D. Ky. 1987).  Given the

nature and continuity of Lamb's dealings with JAHI, their contacts with the state of

Kentucky cannot be said to be random or fortuitous.  They were, instead,

intentionally directed at a corporation located in Kentucky and created

consequences in Kentucky, satisfying the first prong of the *Mohasco* test.

As an alternative basis for jurisdiction, JAHI argues that Lamb has

purposefully availed itself of jurisdiction in Kentucky under the "effects test" of

*Calder v. Jones*, 465 U.S. 783 (1984).  In *Calder*, the Supreme Court held that a

plaintiff could maintain a cause of action in California against Florida residents

when the defendants knowingly caused plaintiff's injury in California.  *Id.* at 790.

To analogize, JAHI has alleged that Lamb covertly agreed with Clark and Elko to

unseat Jordan illegally from his position as CEO and gain control of the company at

a time when it was located in Kentucky.  Thus, goes JAHI's argument, the

defendants knowingly conspired to cause the complained-of injury in Kentucky.

Even if their actions were conducted from outside Kentucky, a finding of personal

availment under the *Calder* "effects test" would be appropriate in this case as well.

The second prong of the *Mohasco* test requires that the cause of action arise from the defendant's activities in the forum state.  This element does not require that the cause of action formally arise from a defendant's contacts with the forum; rather, it requires only that the cause of action have a substantial connection with the defendant's in-state activities.  *Third Nat'l Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1091 (6th Cir. 1989).  For this prong, some type of relationship between the cause of action and the defendant's contact with the forum must exist.  *Lexmark Int'l, Inc.*, 304 F. Supp. 2d at 919.  In the case at hand, JAHI's complained-of injury is a direct result of a purported conspiracy entered into by Lamb, Clark, and Elko at a time when JAHI was located in Kentucky.  This court finds that Lamb's contacts with Kentucky are sufficient to satisfy the "arising from" requirement of the *Mohasco* test.

The final part of the personal-jurisdiction analysis requires that an exercise of jurisdiction over the defendant be reasonable.  To ensure such reasonableness, courts consider a number of factors: the interest of the forum state, the plaintiff's interest in obtaining relief, the burden upon the defendant, the efficient functioning of the judiciary, and furthering the forum state's social policies.  *Lexmark Int'l, Inc.*, 304 F. Supp. 2d at 919.  However, "when the first two elements are met, an inference arises that the third, fairness, is also present; only the unusual case will not meet this third criterion."  *D.C. Micro Development, Inc. v. Lange*, 246 F. Supp.

2d 705, 712 (W.D. Ky. 2003) (quoting *First Nat'l Bank of Louisville v. J.W. Brewer Tire Co.*, 680 F.2d 1123, 1126 (6th Cir. 1982)).  This set of facts presents no such "unusual case."  Both of Lamb's codefendants, Clark and Elko, are residents of the state of Kentucky, the relevant events in this case took place in Kentucky, and Lamb maintained business contacts with JAHI in Kentucky for the better part of a decade before this litigation commenced.  Given these facts, the exercise of jurisdiction by a Kentucky court is manifestly reasonable.

Lamb's key argument in support of its motion to dismiss states that JAHI has failed to plead sufficient non-conclusory facts to create a prima facie showing of personal jurisdiction over Lamb.  In support of its claim, Lamb quotes at length from an array of cases, only one of which was decided by a court located in the Sixth Circuit,[1] which hold that an exercise of jurisdiction is improper when a plaintiff fails to plead facts which create a threshold showing of jurisdiction.  A discussion of each of these cases would be redundant.  All of the cases are, however, alike in that they present situations in which the plaintiff's pleadings and affidavits fail to establish any relationship between the defendant and the forum

---

[1]Oddly enough, in that case, *General Motors Corp. v. Ignacio Lopez de Arriortua*, 948 F. Supp. 656 (E.D. Mich. 1996), the district court *upheld* an exercise of jurisdiction over a non-resident defendant.  In doing so, the court held that "[i]f the nonresident conducted business, committed a tort, or furthered a tortious scheme in the forum, personal jurisdiction is appropriate." *Id.* at 663.  This holding would seem to directly *support* JAHI's claim of personal jurisdiction over Lamb, as the crux of its complaint is that the defendants concocted an illegal scheme to take over control of JAHI when it was located in Kentucky.

state.[2]  In contrast, JAHI has specifically averred that Lamb participated in a conspiracy that was directed at and had effects in Kentucky.  Thus, Lamb's contention must be rejected.

Of course, Lamb is not without recourse in its arguments that this court lacks jurisdiction.  As the Sixth Circuit stated in *Dean*, "a defendant who alleges facts that would defeat . . . jurisdiction can invoke the court's discretion to order a pretrial evidentiary hearing on those facts."  *Dean*, 134 F.3d at 1272 (quoting *Serras v. First Tennessee Nat'l Bank Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)).  Also, Lamb is permitted to raise jurisdictional arguments in the trial as well.  *Dean*, 134 F.3d at 1272.  Lamb has not, however, raised any factual arguments to date that would warrant a pretrial hearing.  It has instead relied on its claim that JAHI has not presented facts that support even a preliminary finding of personal jurisdiction.

To be sure, JAHI is required to present a prima facie case of jurisdiction over Lamb's person.  JAHI has alleged, however, by complaint and affidavit, that Lamb had longstanding contact with a corporation doing business in Kentucky and that

---

[2]For example, in one of the cases cited by Lamb, *Maldonado v. Rogers*, 99 F. Supp. 2d 235 (N.D.N.Y. 2000), the district court held that the state of New York did not have jurisdiction over a Massachusetts resident merely because the plaintiffs (who were New York residents) felt pain and suffering in New York as the result of an automobile accident that occurred in Connecticut.  In the present case, the injury JAHI allegedly suffered was purportedly inflicted in Kentucky.  *Maldonado* would be relevant if JAHI had suffered injury elsewhere and then later relocated to Kentucky while it was still recovering.  Since this hypothetical situation does not reflect the facts of this lawsuit, *Maldonado* is easily distinguishable.

Lamb committed a tort which was directed at and caused injury in Kentucky.  Such

a showing satisfies all three prongs of the *Mohasco* test and is sufficient to

overcome JAHI's burden at this stage of the case.  Accordingly,

      **IT IS ORDERED** that Lamb's motion to dismiss for lack of personal

jurisdiction (DE 39) is **DENIED**.




      Signed on June 20, 2006




JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY