UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 04-226-JBC

GUNDAKER/JORDAN AMERICAN
HOLDINGS, INC.,                                                                    PLAINTIFF,

V.                          MEMORANDUM OPINION AND ORDER

CHARLES R. CLARK, ET AL.,                                                DEFENDANTS.

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on the motion for partial summary judgment of counter-defendant Gundaker/Jordan American Holdings, Inc. and third-party defendant W. Neal Jordan (collectively "JAHI"), DE 151-1, and the motion for summary judgment of defendant and third-party plaintiffs/counterclaimants the Kirkland S. & Rena B. Lamb Foundation ("the Lamb Foundation") and Wendell Johnston (collectively "the Foundation"). DE 151-1. The court, having reviewed the record and being otherwise sufficiently advised, will grant JAHI's motion and deny the Foundation's motion.

**Background**

The plaintiff, Gundaker/Jordan American Holdings, Inc., is a public holding company. At all times relevant to this litigation, it was known as Jordan American Holdings, Inc., and its business headquarters were located in Lexington, Kentucky. At the time the events leading to this suit began, Jordan was JAHI's Chief

1

Executive Officer and a director of the corporation. Charles W. Clark and A.J. Elko, defendants here, also held director positions at JAHI at that time. The Lamb Foundation, which was a shareholder in JAHI until March 2003, and Johnston, a trustee of the Foundation, were subsequently added as codefendants in this action.

On May 21, 2004, JAHI filed a suit against Clark, Elko, and certain John Does who allegedly aided and abetted the named defendants, asserting claims of breach of fiduciary duty. Specifically, JAHI alleged that, in 2001, Clark and Elko conspired with others to remove Jordan from his position as CEO of JAHI, the purported goal of their alleged scheme being to gain control of JAHI and prevent their own loss of employment. To accomplish this end, Clark and Elko allegedly solicited the revocation of proxies from one or more shareholders of JAHI, including the Lamb Foundation, in an effort to defeat a quorum at JAHI's annual meeting, which was to take place on May 22, 2001. Shortly after the meeting was adjourned, Elko, Clark, and Jordan held a special meeting of the board of directors, at which Elko and Clark proposed that Jordan be removed as an officer of JAHI. This decision was revisited and affirmed at a subsequent board meeting on June 1, 2001.

The Foundation filed a third-party complaint against JAHI on July 5, 2006, alleging abuse of process with regard to the suit filed by JAHI and fraud, breach of confidence, and conflict of interest with regard to JAHI's management of the Lamb Foundation's $3,000,000 investment in JAHI.

**Legal Standard**

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The moving party can satisfy its burden by demonstrating an absence of evidence to support the non-moving party's case. *Id*. at 324-25. To survive summary judgment, the non-moving party must come forward with evidence on which the jury could reasonably find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). The non-moving party must present more than a mere scintilla of evidence to defeat a motion for summary judgment. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989); Fed. R. Civ. Pro. 56(e). The court must view all of the evidence in the light most favorable to the party opposing summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**Analysis**

    **Motion for Partial Summary Judgment**

The complaint by the Foundation consists of four claims: (1) abuse of process, (2) conflict of interest, (3) breach of confidence, and (4) fraud. JAHI's motion does not address the abuse-of-process claim but seeks the dismissal of the other three claims.

        *1. Fraud*

Fraud must be pled with specificity. *See* Fed. R. Civ. P. 9(b). *See also*

3

*Yuhasz v. Brush*, 341 F.3d 559, 563 (6th Cir. 2003) ("The Sixth Circuit interprets Rule 9(b) as requiring plaintiffs to 'allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.' *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-162 (6th Cir. 1993) (quotation omitted)."). The Foundation cites evidence that until May 22, 2001, Jordan "made every determination with respect to use of Foundation assets placed with Jordan/Gundaker" and then alleges he engaged in self-dealing. DE 159-1, 5-6. According to the Foundation, following its investment in JAHI, "[t]he $3,000,000 of Foundation assets, subsequently, were squandered by Jordan, with an $850,000 default in interest (dividend) payments and the principal of the loan (preferred shares) was never returned." DE 159-1, 6. Despite making this statement in passing, which seems to indicate there was a loan from the Foundation to JAHI, the Foundation did not file the purchase agreement with its response.

If the $3,000,000 investment by the Foundation in JAHI was a simple investment and not a loan, the court would consider the actions of JAHI under the so-called "business judgment rule." Under the law of Kentucky and other states, "'[t]he business judgment rule is a presumption that in making a business decision, not involving self-interest, the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" *Allied Ready Mix Co. ex rel. Mattingly et al v. Allen*,

4

994 S.W.2d 4, 8 (Ky. Ct. App. 1998) (citing *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)).  Moreover, "[t]he party challenging the board's decision bears the burden to establish facts rebutting this presumption." *Id.* at 8-9.

After reviewing the record, including several documents referencing the Foundation's investment in JAHI and JAHI's preferred stock, *see, e.g.*, DE 101, and not finding any references characterizing the $3,000,000 investment as a loan, and without the ability to review the initial purchase agreement cited in passing by the Foundation, the court concludes the Foundation's investment in JAHI was not a loan.  Therefore, the business judgment rule applies to the subsequent decisions of JAHI.  A conclusory statement is not evidence and, without even a scintilla of evidence of a loan, the Foundation is left with the contention that JAHI "squandered" its investment.  Losses are a common risk in investing and, without specific allegations of wrongdoing, the mere presence of losses – even large losses – cannot support a fraud claim.  Because the Foundation has not provided any specific evidence of wrongdoing by JAHI beyond an unsupported conclusory statement in passing about a loan, its fraud claim fails.

### 2. Breach of Confidence

Although the Foundation cites no authority, its claim for "breach of confidence" apparently posits that the $3,000,000 investment was given to JAHI in trust or constructive trust and then JAHI made an unconscionable disposition of it.  *See Weissinger v. Mannini*, 311 S.W.2d 199, 201 (Ky. 1958) (mentioning

"cases holding under the peculiar circumstance it would be inequitable to allow the holder of title to property to retain it or make an unconscionable disposition through a breach of confidence"). Because the Foundation has not produced any evidence beyond conclusory statements that the $3,000,000 was intended as something more than an investment in JAHI, this claim also fails as a matter of law.

### 3. Conflict of Interest

The final claim contested in the MPSJ, a claim for "conflict of interest," implicates the duty of loyalty owed by a director or officer to a company. *See Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 483 (Ky. 1991) (noting there is a "fiducial confidence as between the corporate employer" and its officers and directors which entails "a duty of loyalty and faithfulness to the corporation. This duty also includes a duty not to act against the employer's interest"). The Foundation is able to point to admissions in the record that establish JAHI owed it a fiduciary duty but is unable to produce any evidence upon which a reasonable jury could rely in finding JAHI breached this duty by "self-dealing."

The gravamen of the Foundation's argument regarding JAHI's alleged breach of its duty of loyalty is that it delivered $3,000,000 worth of stock to JAHI which JAHI then, on February 18, 1993, recommended it liquidate in order to purchase JAHI stock. The Foundation claims that by recommending the purchase of its own shares, JAHI engaged in self-dealing. Such a claim is unsustainable because there

6

is no allegation by the Foundation that it was unaware JAHI was recommending an investment in itself or otherwise concealing relevant facts, and, therefore, the court concludes the Foundation was on notice of any potential conflict of interest.

**Motion for Summary Judgment**

The complaint by JAHI against the Foundation alleges breach of fiduciary duty and the Foundation moves for summary judgment on this claim.

This claim hinges on whether the actions of the Foundation, as a holder of JAHI preferred stock, and Richard Williams, as a JAHI director, were taken with the intent of promoting the best interests of JAHI or with the intent of raiding the remaining assets of JAHI for the benefit of the Foundation at the expense of other shareholders.  JAHI points, for example, to the deposition of Williams and his statement he joined the board of JAHI on June 1, 2001, to look out for the interests of the Foundation after the failed annual meeting of May 22, 2001.  DE 138-2.  JAHI also points to the attempt by the Foundation in advance of the May 22, 2001, meeting to revoke its proxy.  DE 151-2, 2-3.  In March 2003, JAHI paid $200,000 to the Foundation and Williams left the board of JAHI.  Williams, *see* DE 102, 3, and other trustees of Foundation, including Johnston, *see, e.g.*, DE 101, 6-7, state they did not act improperly in relation to either the May 2001 annual meeting and subsequent board meetings or the period of Williams's service on the JAHI board from June 2001 until March 2003.  Because the parties present conflicting evidence on this issue, the court finds genuine issues of material fact

exist, including, but not limited to, the motivation behind the actions of the Foundation and Williams with regard to JAHI.

**Conclusion**

Accordingly,

**IT IS ORDERED** JAHI's motion, DE 151-1, is **GRANTED** and the Foundation's motion, DE 146-1, is **DENIED**.

Signed on  December 12, 2007

*Jennifer B. Coffman*
JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCY