**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LEXINGTON DIVISION**

**CIVIL ACTION NO. 04-226-JBC**

**GUNDAKER/JORDAN AMERICAN**
**HOLDINGS, INC.,**                                                             **PLAINTIFF,**

**V.**                              <u>**MEMORANDUM OPINION AND ORDER**</u>

**CHARLES R. CLARK, ET AL.,**                                        **DEFENDANTS.**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court upon the motions of defendants Charles R.

Clark and A.J. Elko for judgment as a matter of law, for a new trial, or for

remittitur, and for a mistrial (R. 323, R. 326); defendant Charles R. Clark's motion

to set aside, alter, and amend judgment, and for judgment as a matter of law, for a

new trial, or for remittitur, and for a mistrial (R. 331); defendant Lamb Foundation's

renewed motion for judgment as a matter of law (R. 325) and motion to alter or

amend judgment by remittitur of damages (R. 336); and the plaintiff's motion to set

aside judgment in favor of proposed judgment of plaintiff (R. 335).  The court will

grant in part and deny in part Clark and Elko's motions for judgment as a matter of

law (R. 323, R. 326); these motions are granted in regard to punitive damages

only.  The court also will grant in part and deny in part the defendants' motions to

set aside, alter, and amend judgment (R. 331, R. 336) to the extent that they

request a judgment entered by the court, not the clerk.  The plaintiff's motion to

set aside judgment (R. 335) is granted in part and denied in part, and the amended

judgment will provide for post-judgment interest.  The court declines to adopt the plaintiff's proposed judgment and, instead, will enter its own amended judgment. All remaining motions are denied.

**I.      Background**

The court conducted a jury trial on the instant action from October 27, 2008, through November 7, 2008.  The jury returned a special verdict in favor of the plaintiff and against defendants Charles R. Clark and A.J. Elko for breach of fiduciary duty and against defendant Lamb Foundation for aiding and abetting a breach of fiduciary duty.  The jury also found that defendant Wendell Johnston was not liable for aiding and abetting a breach of fiduciary duty and that the plaintiff was not liable for abuse of process.  The clerk then entered judgment on November 28, 2008.

**II.     Defendants' Motions for Judgment as a Matter of Law, for a New Trial, for Remittitur, and for a Mistrial**

The court first will consider the various motions of the defendants for judgment as a matter of law, for a new trial, for remittitur, and for a mistrial. Because the issues raised in these motions are related, the court will discuss them together.  However, when necessary, the court will address arguments that relate only to a particular defendant.

**A.     Legally Sufficient Basis Exists for Liability Against Clark, Elko, and Lamb Foundation**

The defendants' motions for judgment as a matter of law and for a new

2

trial fail because a legally sufficient basis exists for liability against the defendants. Judgment as a matter of law is appropriate where "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Denhof v. City of Grand Rapids, Mich.*, 494 F.3d 534, 543 (6th Cir. 2007) (citing FED. R. CIV. P. 50(a)).   In contrast, a new trial must be granted if "the verdict is clearly against the great weight of the evidence."  *Id.* (citing *J.C. Wyckoff & Assoc. v. Standard Fire Ins. Co.*, 936 F.2d 1474, 1487 (6th Cir. 1991)).  While a court must draw reasonable inferences in favor of the party opposing a motion for judgment as a matter of law, *Bowman v. Corrections Corp. of America*, 350 F.3d 537, 544 (6th Cir. 2003) (citing *Toth v. Yoder Co.*, 749 F.2d 1190, 1194 (6th Cir. 1984)), it must "compare the opposing proofs, weigh the evidence, and set aside the verdict if it finds that the verdict is against the clear weight of the evidence" when determining whether to order a new trial, *Smith v. Louis Berkman Co.*, 894 F.Supp. 1084, 1094 (W.D. Ky. 1995) (citing *Porter v. Lima Memorial Hosp.*, 995 F.2d 629, 635 (6th Cir. 1993)).  Regardless of the standard, the evidence presented at trial supports the jury's verdict.

The jury found that the plaintiff proved by clear and convincing evidence that Clark and Elko, as directors or officers of the plaintiff, failed to discharge their duties to the plaintiff in good faith, on an informed basis, and in a manner they honestly believed to be in the best interest of the plaintiff.  The jury also found that the plaintiff proved by clear and convincing evidence that this failure constituted

3

willful misconduct or wanton or reckless disregard for the best interests of the plaintiff.  "Clear and convincing proof does not necessarily mean uncontradicted proof.  It is sufficient if there is proof of a probative and substantial nature carrying the weight of evidence sufficient to convince ordinarily prudent-minded people." *Janakakis-Kostun v. Janakakis*, 6 S.W.3d 843, 850 (Ky. Ct. App. 1999) (citing *Rowland v. Holt*, 70 S.W.2d 5, 9 (Ky. 1934)).  However, the plaintiff must "produce evidence substantially more persuasive than a preponderance of the evidence, but not beyond a reasonable doubt." *Fitch v. Burns*, 782 S.W.2d 618, 622 (Ky. 1989).

Clear and convincing evidence supports the jury's findings.  Clark and Elko acted to remove W. Neal Jordan as president of the plaintiff so that they could preserve their own jobs.  They knew that Jordan intended to downsize the company in order to save money.  Under Jordan's plan, all employees, with the exception of Jordan and his secretary, would be laid off.  The jury could reasonably infer that Clark and Elko ousted Jordan to prevent him from terminating their employment.

Even though Clark and Elko testified that they removed Jordan because they thought he was a risk to the company and would invest company funds in an off-shore sports-betting venture, the jury still found them liable.  The decision to believe Jordan instead of Clark and Elko is an issue of credibility, which is the purview of the jury, not the court. *Jackson v. FedEx Corp. Services, Inc.*, 518 F.3d

388, 392 (6th Cir. 2008).  Because a reasonable juror could have found that Clark and Elko lacked credibility, the court will not disturb the verdict.

Although self-interest alone is not sufficient for liability under Kentucky's director- and officer-liability statutes, KY. REV. STAT. §§ 271B.8-300(5)-(6), -420(5)-(6), it may result in liability if a director or officer, in acting on his or her self-interest, breaches one of the fiduciary duties enumerated in KY. REV. STAT. §§ 271B.8-300(1), -420(1).  The jury could reasonably infer that Clark and Elko's self-interest motivated them to remove Jordan from the company, thus breaching their duties to act "[i]n good faith" and "[i]n a manner [they] honestly believe[ ] to be in the best interests of the corporation," *Id.*  Nothing in the statutes requires the plaintiff to prove that Clark and Elko acted with the "subjective intent of . . . harming the corporation" or with "extreme indifference to the interest of the corporation," R. 323-2, at 8.  Instead, they require that the breach constitutes "willful misconduct or wanton or reckless disregard for the best interests of the corporation or its shareholders."  KY. REV. STAT. §§ 271B.8-300(5)(b), -420(5)(b). At the very least, the jury could reasonably infer that Clark and Elko placed their own interests above those of the corporation when they acted to remove Jordan and recklessly disregarded the best interests of the corporation in so doing. Furthermore, the court's finding that the May 22, 2001, meeting of the plaintiff's board of directors was properly held does not shield the defendants from liability. Although the meeting itself was valid, Clark and Elko's use of their positions as

5

directors to protect their jobs, instead of acting for the best interests of the corporation, supports the jury's finding of breach of fiduciary duty.

The Lamb Foundation is not entitled to judgment as a matter of law because sufficient evidence exists to support the jury's finding that it aided and abetted Clark and Elko in their breach of fiduciary duty. Under Kentucky law, "where a person in a fiduciary relationship to another violates his duty as a fiduciary, a third person who participates in the violation of duty may be liable to the beneficiary." *Steelvest, Inc. v. Scansteel Serv. Ctr.*, 807 S.W.2d 476, 486 (Ky. 1991) (citing *Whitney v. Citibank, N.A.*, 782 F.2d 1106 (2d Cir. 1986)). In order to prevail on a claim for aiding and abetting a breach of fiduciary duty, the plaintiff must prove (1) the existence of a fiduciary relationship between the plaintiff and Clark and Elko; (2) a breach of that fiduciary relationship; and (3) that the Lamb Foundation knew of the breach and knowingly joined or aided and abetted the actions constituting the breach. *See Miles Farm Supply, LLC v. Helena Chemical Co.*, No. 4:06-CV-23-R, 2008 WL 3010064, at *6 (W.D. Ky. Aug. 1, 2008) (citing *Steelvest*, 807 S.W.2d at 485). The court has already determined that sufficient evidence exists to show that Clark and Elko owed a fiduciary duty to the plaintiff and that they breached that duty. Thus, the first two elements have been satisfied.

The trial revealed that the Lamb Foundation joined Clark and Elko in their attempt to oust Jordan. The Lamb Foundation agreed to revoke its proxies so that a quorum could not be established at the May 22, 2001, shareholders' meeting of

6

the plaintiff.  Regardless of whether the Lamb Foundation successfully revoked its proxies, the jury could reasonably infer that the foundation's attempt to revoke them constituted aiding and abetting a breach of fiduciary duty.  By preventing the shareholders' meeting from taking place, Clark, Elko, and the Lamb Foundation kept Jordan from regaining control over the company.  This enabled Clark and Elko to preserve their jobs, and the Lamb Foundation was able to use its influence with Clark and Elko to promote its interests over those of the plaintiff and the other shareholders of the plaintiff.

Similarly, the conversion of the Lamb Foundation's stocks from preferred to common shares supports the jury's verdict.  Again, even if the conversion was never consummated, the mere fact that the foundation attempted to convert its stocks supports a conclusion that it had joined with Clark and Elko in order to prevent Jordan from regaining control over the company.  The jury could reasonably infer that Clark and Elko acted with reckless disregard for the best interests of the plaintiff when they removed Jordan and prevented him from regaining control over the company.  The Lamb Foundation is also liable for this continued breach since it assisted Clark and Elko in their efforts to stay in power.

The placement of Richard Williams on the plaintiff's board of directors provides further evidence of the Lamb Foundation's aiding and abetting the breach of fiduciary duty.  A reasonable juror could infer that Williams was serving on the plaintiff's board as a representative of the Lamb Foundation because he

7

simultaneously served on the board of the Lamb Foundation and acted to protect the Lamb Foundation's investment in the plaintiff.  In addition, Williams tried to secure a $500,000 debenture for the Lamb Foundation.  This debenture was one of the only remaining assets of the plaintiff.  Even though Williams ultimately was unsuccessful in obtaining the debenture, his actions support a conclusion that the Lamb Foundation aided and abetted Clark and Elko throughout the breach.  Thus, the role of the Lamb Foundation in Clark and Elko's scheme to control the plaintiff was not limited to Jordan's removal.

The Lamb Foundation cannot escape liability by arguing that Clark and Elko relied on legal advice when they removed Jordan and took control over the plaintiff.  While KY. REV. STAT. §§ 271B.8-300(3)(b), -420(3)(b) states that "[i]n discharging his duties a director [or officer] shall be entitled to rely on information, opinions, reports, or statements . . . if prepared or presented by . . . legal counsel," the statute is inapplicable to the facts of this case.  Clark and Elko did not make a simple mistake regarding Jordan's removal that was caused by incorrect or inadequate legal advice.  On the contrary, Clark and Elko devised a plan to remove Jordan and assume control over the plaintiff and merely consulted with counsel to determine how they could carry out their plan.  As the court has previously stated, the board meeting in which Jordan was removed was lawful.  Nevertheless, Clark and Elko breached their fiduciary duty by acting with a reckless disregard for the best interests of the plaintiff.  Therefore, they are liable for breach of fiduciary duty

and the Lamb Foundation is liable for aiding and abetting them.

### B.    Compensatory Damages

The defendants' motions regarding damages also fail because evidence presented at trial provides a legally sufficient basis for the jury's award and the jury's award is not against the great weight of the evidence.  The plaintiff proved that the defendants' breach was the legal cause of its damages.  After Jordan was removed as an officer for the plaintiff, its assets dramatically decreased.  During the fifteen-month period in which the defendants controlled the company, it lost approximately $1,400,000 in assets.  Prior to his removal, Jordan announced that he was going to downsize the company in order to reduce expenditures, which were exceeding $1,000,000 annually.  If the defendants had not seized control from Jordan and prevented him from drastically cutting expenses, the company could have retained more of its assets.  Even if the company produced little or no revenue, Jordan's efforts to downsize, at a minimum, would have preserved the company's assets.  Because Clark and Elko breached their fiduciary duty to the plaintiff, the company continued to operate as usual, which caused it to lose most of its assets and incur additional liabilities.  Therefore, Clark and Elko's breach is the legal cause of the plaintiff's damages.

Even though the first quarterly statement (Plaintiff's Exhibit 73) used in determining the amount of lost assets is dated March 31, 2001, and Jordan was not removed until June 1, 2001, the jury still could use those documents as a

9

benchmark for damages.  While the financial statements may not reveal the exact amount of loss, the jury could use them, along with testimony and additional evidence, to conclude that the breach damaged the plaintiff.  Furthermore, the defendants had ample opportunity at trial to cross-examine witnesses regarding the financial statements, and the jury was able to weigh all of the evidence, including those statements, in making its decision.

The amount of damages is neither uncertain nor excessive.  Therefore, the defendants are not entitled to judgment as a matter of law, a new trial, or remittitur.  "If the existence of some damage is certain, the mere fact that the extent of damage is hard to determine will not defeat liability."  RONALD W. EADES, KENTUCKY LAW OF DAMAGES, § 2:5 (Thomson Reuters 2009) (citing *Wiley v. Adkins*, 48 S.W.3d 20, 23 (Ky. 2001); *Shields v. Booles*, 38 S.W.2d 677, 680 (Ky. 1931)).  In addition, "[i]t is the uncertainty of the existence of some damage as a result of the wrongful act, not uncertainty of amount, that defeats recovery." EADES, *supra*, § 6:1 (citing *Johnson v. Cormney*, 596 S.W.2d 23, 27 (Ky. Ct. App. 1979) (overruled by *Marshall v. City of Paducah, Ky.*, 618 S.W.2d 433 (Ky. Ct. App. 1981)); *see also Shields v. Booles*, 38 S.W.2d 677, 680 (Ky. 1931)).  As previously discussed, the plaintiff has proved that Clark and Elko's breach caused its damages.  Along with proving that the loss of assets resulted from the breach, the plaintiff also showed that the defendants' breach caused it to incur substantial liabilities, such as legal fees, and losses of furniture, office equipment, and a client

10

list that was purchased for $105,000.

The court need not attempt to determine precisely how the jury calculated the award of damages.  "Damages are not rendered uncertain because they cannot be calculated with absolute exactness.  It is sufficient if a reasonable basis of computation is afforded, although the result be only approximate." *Eastman Kodak Co. of New York v. Southern Photo Materials Co.*, 273 U.S. 359, 379 (1927) (quoting  and accepting as a correct statement of the law *Eastman Kodak Co. of New York v. Southern Photo Materials Co.* 295 F. 98, 102 (5th Cir. 1923)).  The loss of assets shown in the quarterly statements (Plaintiff's Exhibits 73 and 91) and the evidence of other losses and liabilities provide a means to calculate the plaintiff's damages to a reasonable degree of certainty.  Thus, the award must not be disturbed.

In determining whether damages are excessive, the court must apply the "first blush" rule.  An award of damages must be set aside if "the judicial mind immediately is shocked and surprised at the great disproportion of the size of the verdict to that which evidence in the case would authorize." *Wilson v. Redken Laboratories, Inc.*, 562 S.W.2d 633, 636 (Ky. 1978).  Such an award must be "grossly disproportionate as to the measure of damages." *Fossett v. Ligon Specialized Haulers, Inc.*, No. 84-5948, 1985 WL 13962, at *2 (6th Cir. 1985) (quoting *Wilson*, 562 S.W.2d at 636).  The jury's award neither shocks the judicial mind nor is grossly disproportionate to the measure of damages.  As discussed

11

above, the plaintiff introduced sufficient evidence to form a basis for the award. The quarterly statements establish that it lost approximately $1,400,000 in assets. The plaintiff also was forced to incur additional liabilities and expenses and lost furniture, deposits, and proprietary information as a result of the defendants' actions. The jury's verdict is entitled to considerable deference, and the court finds no reason to set aside the jury's calculation of damages or order a new trial or remittitur.

The Lamb Foundation is liable for a percentage of the total damage caused to the plaintiff as a result of the overall breach of fiduciary duty. The jury attributed twenty percent of the total damage to the Lamb Foundation. Since the jury awarded $2,500,000 to the plaintiff in compensatory damages, the Lamb Foundation is liable for $500,000. The plaintiff did not have to prove that the acts of the Lamb Foundation caused specific damages. The plaintiff merely had to prove that the Lamb Foundation joined or aided and abetted Clark and Elko's breach of fiduciary duty and that breach was the legal cause of damages to the plaintiff. The Lamb Foundation then became liable for a portion of the overall damages.

Nothing in the record indicates that the plaintiff is attempting to recover personal damages to Jordan and his investment. The proof shows that the plaintiff lost assets and incurred additional liabilities because of the defendants' breach. Neither the evidence nor the jury's verdict suggests that the damages award was based on personal damages to Jordan.

12

**C.    Punitive Damages**

Clark and Elko are entitled to a judgment as a matter of law in regards to punitive damages because no legally sufficient basis exists to support such an award.  Under Kentucky law, punitive damages are appropriate only where the plaintiff proves that the defendant "acted . . . with oppression, fraud or malice." KY. REV. STAT. § 411.184(2).  The statute expressly defines these terms as follows,

> (a)    "Oppression" means conduct which is specifically intended by the defendant to subject the plaintiff to cruel and unjust hardship.
>
> (b)    "Fraud" means an intentional misrepresentation, deceit, or concealment of material fact known to the defendant and made with the intention of causing injury to the plaintiff.
>
> (c)    "Malice" means either conduct which is specifically intended by the defendant to cause tangible or intangible injury to the plaintiff or conduct that is carried out by the defendant both with a flagrant indifference to the rights of the plaintiff and with a subjective awareness that such conduct will result in human death or bodily injury.

*Id.* 411.184(1)(a)-(c).

The plaintiff clearly cannot rely on oppression as a source of punitive damages because it presented no evidence suggesting that Clark and Elko intended to subject it to cruel and unjust hardship.  Likewise, malice cannot constitute a basis for the award of punitive damages.  The plaintiff did not prove that Clark and Elko specifically intended to cause tangible or intangible injury to it.  In fact, it did

13

not even allege that Clark and Elko intended to cause tangible or intangible injury to it.  Instead, the plaintiff alleged that "[t]he actions of the Defendants . . . were committed with a conscious disregard for the best interests of the corporation and its shareholders."  R. 1, at 9.  The plaintiff simply proved that they acted with reckless disregard for its best interests, which cannot support an award of punitive damages.

Lastly, the plaintiffs failed to prove that Clark and Elko acted with fraud. There is no evidence to suggest that they made an intentional misrepresentation, deceived the company, or concealed a material fact.  While the plaintiff correctly notes that the Kentucky Supreme Court held that "a breach of fiduciary duty is equivalent to fraud," *Steelvest, Inc.*, 807 S.W.2d at 487, subsequent decisions have distinguished between a breach of fiduciary duty and fraud.  In *Bariteau v. PNC Financial Services Group, Inc.*, 285 Fed. App'x 218, 223 (6th Cir. 2008) (interpreting Kentucky law), the court declined to apply the discovery rule to toll the statute of limitations period in a case involving breach of fiduciary duty.  Even though the discovery rule applies to "action[s] for relief or damages on the ground of fraud or mistake," KY. REV. STAT. §§ 413.120(12), .130(3), the court declined to extend it to actions for breach of fiduciary duty, *Bariteau*, 285 Fed. App'x at 224. *Bariteau* emphasized that *Steelvest* "address[ed] whether the attorney-client privilege applies to certain communications" but "says nothing about whether a breach of fiduciary duty is equivalent to fraud for discovery-rule purposes."  *Id.* at

14

223.  Similarly, *Ingram v. Cates*, 74 S.W.3d 783, 787 (Ky. Ct. App. 2002), held, without mentioning *Steelvest*,  that "fiduciary-breach actions are covered by KY. REV. STAT. ANN. § 413.120(7), the catch-all subsection applicable to actions 'not otherwise enumerated' in § 413.120" instead of KY. REV. STAT. § 413.120(12), the subsection that applies to actions for "fraud or mistake." *Bariteau*, 285 Fed. App'x at 223.

Kentucky's punitive-damages statute, KY. REV. STAT. § 411.184(1)(b), expressly defines fraud, and that definition does not include breach of fiduciary duty.  This court, like *Bariteau*, will narrowly construe *Steelvest's* holding as being limited to cases involving attorney-client privilege.  The plaintiff did not present evidence to satisfy the statutory definition of fraud, and it cannot rely on *Steelvest* to overcome its burden of proving fraud.  Therefore, fraud will not support the punitive-damages award.  Since the plaintiff failed to prove that Clark and Elko "acted . . . with oppression, fraud or malice," it cannot recover punitive damages.

### D.    Mistrial

The defendants are not entitled to a mistrial because there is no reasonable probability that improper statements made by the plaintiff's counsel during closing arguments influenced the jury's verdict.  In an attempt to show that Clark and Elko have bad character, the plaintiff's counsel tried to argue that after Clark and Elko took control over the company, they stopped it from paying for a life insurance policy for Jordan, who previously had cancer.  However, as soon as the plaintiff's

15

counsel said, "Neil Jordan had been through cancer," counsel for Clark objected.  In open court, Clark's counsel explained that the counsel for the plaintiff was appealing to the sympathy of the jury on an irrelevant matter.  Even though the plaintiff's counsel contended that his argument was relevant to the character of the defendants, the court sustained the objection and instructed the jury not to base its verdict on sympathy or bias in any way.  The court also emphasized that cancer is not relevant to the case.

The court's admonition was sufficient to remedy the improper statement made by the plaintiff's counsel.  Unlike *City of Cleveland, Ohio v. Peter Kiewit Sons' Co.*, 624 F.2d 749 (6th Cir. 1980), upon which Clark primarily relies to support his request for a mistrial, counsel for the instant plaintiff made the improper comment only once during a nine-day trial.  In *Peter Kiewitt Sons' Co.*, the attorney "continuously sought" to suggest that the defendant was a large, out-of-state corporation and "strived to so inform [the jury] at every opportunity."  *Id.* at 756.  The conduct in the instant action is significantly less egregious, and, therefore, the likelihood that it prejudiced the jury is minimal.  Furthermore, Jordan was not the plaintiff, and the case had nothing to do with his health.

Nor does the jury's verdict support the demand for a mistrial.  The court has already concluded that sufficient evidence supports the damages awarded and that those damages are not excessive.  Therefore, the defendants' request for a mistrial must be denied.

16

### III.    Motions to Set Aside Judgment

The clerk's entry of judgment was erroneous and must be set aside.  When "the jury returns a special verdict or a general verdict with answers to written questions," the court must approve the judgment before the clerk may enter it. FED. R. CIV. P. 58(b)(2)(A).  Because the jury returned a special verdict and answers to interrogatories (R. 321), the clerk had no authority to enter judgment prior to the court's approval of it.

While the parties agree that the judgment should be set aside, they disagree as to the content of an amended judgment.  Besides the issue of whether the court or the clerk should have entered judgment, the defendants' arguments regarding an amended judgment are the same as those that the court has already addressed in its discussion of their other post-trial motions.  Therefore, the court need not discuss them again.

The court will grant in part and deny in part the plaintiff's motion to set aside the judgment.  The plaintiff is entitled to post-judgment interest, but the defendants are not liable jointly and severally.  In addition, the court declines to accept the plaintiff's proposed judgment in its entirety because it erroneously incorporates joint and several liability and punitive damages.

The defendants are not jointly and severally liable because KY. REV. STAT. § 411.182 requires the court to apportion liability among them.  Under this statute, which codified Kentucky's common-law comparative fault doctrine, the defendants

17

are subject only to several liability, not joint liability.  *See Degener v. Hall Contracting Corp.*, 27 S.W.3d 775, 779 (Ky. 2000).  The statute notwithstanding, the plaintiff argues that joint and several liability applies because of the holding in *Steelvest* and because the defendants acted in concert.[1]  While *Steelvest* states that "a person who knowingly joins with or aids and abets a fiduciary in an enterprise constituting a breach of the fiduciary relationship becomes jointly and severally liable with the fiduciary for any profits that may accrue," 807 S.W.2d 476, 485 (citations omitted), that statement was made in recognition of "aiding and abetting a breach of fiduciary duty" as a common-law cause of action.  The Kentucky Supreme Court did not have the opportunity to address the effect of KY. REV. STAT. § 411.182 on the common law because that issue was not before it and *Steelvest* commenced before the statute went into effect.  None of the parties identified any case that examines the apportionment statute's effect on liability for those who aid and abet a breach of fiduciary duty, and the court was unable to find such a case as well.  However, in *James Medical Equipment, Inc. v. Allen*, Nos. 2005-CA-000128-MR, 2005-CA-000272-MR, 2006 WL 2788435, at *6-*7 (Ky. Ct. App. Sept. 29, 2006), the Kentucky Court of Appeals held that the trial court did not err when it instructed the jury to apportion fault among parties engaged in a conspiracy.  While this decision has no precedential value, the Court's reasoning is

---

[1] The plaintiff also relies on *Ohio Drill and Tool Co. v. Johnson*, 625 F.2d 738 (6th Cir. 1980).  However, that case involves Ohio law and, therefore, is of no assistance in determining the effect of KY. REV. STAT. § 411.182 on Kentucky common law.

18

persuasive.  The language of KY. REV. STAT. § 411.182 clearly and unambiguously states that it applies to "all tort actions."  Thus, the statute alters the common law and precludes joint tortfeasors, including those who breached a fiduciary duty or aided and abetted a breach of fiduciary duty, from being held jointly and severally liable.

*James Medical Equipment, Inc.* also refutes the plaintiff's assertion that the defendants are jointly and severally liable because they acted in concert.  The plaintiff in that case mistakenly relied on the dissent in *James v. Wilson*, 95 S.W.3d 875 (Ky. 2002) when arguing that the liability for joint tortfeasors who act in concert is joint and several.  The dissent, however, "does not in any way represent the actual holding of the case," *James Medical Equipment, Inc*., 2006 WL 2788435, at *7, and the court need not consider it.                              `

The court agrees that the plaintiff is entitled to post-judgment interest in accordance with 28 U.S.C. § 1961.  In its judgment, the court will use the weekly average one-year constant maturity (nominal) Treasury yield, as published by the Federal Reserve System, as the rate of interest.  *See Compressed Gas Corp., Inc. v. United States Steel Corp.*, 857 F.2d 346, 353 (6th Cir. 1988), *cert. denied*, 490 U.S. 1006 (1989).

## IV.   Conclusion

Accordingly,

**IT IS ORDERED** that the motions of Charles R. Clark and A.J. Elko for

judgment as a matter of law, for a new trial, or for remittitur, and for a mistrial (R. 323, R. 326) are **GRANTED IN PART AND DENIED IN PART**.  The motions are granted to the extent that they seek a judgment as a matter of law on punitive damages.  On all other issues, they are denied.

      **IT IS FURTHER ORDERED** that Charles R. Clark's motion to set aside, alter and amend judgment, and for judgment as a matter of law, for a new trial, or for remittitur, and for a mistrial (R. 331) is **GRANTED IN PART AND DENIED IN PART**.  The motion is granted in regard to punitive damages and to the extent that it requests a judgment entered by the court, not the clerk.

      **IT IS FURTHER ORDERED** that the Lamb Foundation's renewed motion for judgment as a matter of law (R. 325) is **DENIED,** and its motion to alter or amend judgment by remittitur of damages (R. 336) is **GRANTED IN PART AND DENIED IN PART**.  The motion is granted to the extent that it requests a judgment entered by the court, not the clerk.

      **IT IS FURTHER ORDERED** that the plaintiff's motion to set aside judgment in favor of proposed judgment of plaintiff (R. 335) is **GRANTED IN PART AND DENIED IN PART**.  The court will enter an amended judgment that provides for post-judgment interest, but it will not impose joint and several liability for compensatory damages.  The court declines to adopt the plaintiff's proposed judgment because it does not fully incorporate the rulings contained in this memorandum opinion and order.

A separate, amended judgment will issue in accordance with this

memorandum opinion and order.

Signed on  August 3, 2009

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY